The clerk can call the next case. Good morning, Your Honors. Kathleen Hill to the appellant, Rodney Miller. Good morning. Mary Needham, N.E.E.D.H.A.M. on behalf of the people. Thank you. Yes, Kathleen, whenever you're ready. Good morning, Your Honors. Again, my name is Kathleen Hill. May it please the Court? Mr. Miller raised three arguments in his brief. I intend to focus my comments on arguments one and two, though I'm, of course, happy to discuss any matter about which the Court may have questions.  Your Honors, defense counsel in this case was ineffective for failing to move to suppress a custodial confession made without benefit of Miranda warnings. Rodney Miller was arrested by Officer DeYoung after he got into an accident while DeYoung was attempting to effectuate a traffic stop. At trial, DeYoung testified that he placed Miller into custody and then immediately asked Miller if he was fleeing because he knew the car to be stolen, to which Miller replied yes. The State does not dispute that this was a custodial statement made without benefit of Miranda warnings and was therefore subject to suppression. Defense counsel, however, did not move to suppress the confession, and that fell below an objective standard of reasonable representation and prejudiced Miller. Was that confession made at the scene or later on? It's alleged it was made at the scene immediately following the accident. Was that made while he was laying on the ground? It's not clear from the transcript whether he was still laying on the ground, although it appears that he was laying on the ground for the duration of his statement. And the video that was filed, it didn't show that there was any confession on the video? That's correct, Your Honor. There's no evidence of a confession on the video. There was no rational or strategic reason for counsel to fail to seek suppression of Miller's alleged confession, and the State offers none. When suppression represents both the best and wisest course of action, counsel is ineffective for failing to move to suppress damaging evidence. Suppression was indeed the best and wisest course of action here. As the Illinois Supreme Court has held, a confession is the most powerful piece of evidence that a State can offer, and its effect is incalculable. This was the single most damaging piece of evidence in the case, as it was the only evidence that was inconsistent with Miller's theory that he was in fact a bona fide purchaser of the car and that the car was not stolen. Because counsel failed to move to suppress this, this motion would have had a reasonable probability of success at trial. DeYoung's testimony was unambiguous that Miller was in custody at the time that the statement was allegedly made, and there is no evidence that Miranda warnings were given. By counsel's failure to move to suppress this suppressible statement, Miller was denied effective assistance of counsel. Was there any evidence in this case that the defendant was given Miranda warnings? No, Your Honor. Rodney Miller was also denied a fair trial when the trial court, in its ruling, mistakenly recalled that Sabrina Wright had testified that the car's steering column was peeled, which was consistent with otherwise impeached testimony from Officer DeYoung. Sabrina Wright, in fact, never testified that the steering column of the car was peeled. As the Illinois Supreme Court held in People v. Mitchell, a defendant is denied a due process right to a fair trial when a court mistakenly recalls the evidence leading to a material injury. That's exactly what happened here. Sabrina Wright never testified about the condition of the steering column. It was only Officer DeYoung's testimony about the steering column, which was offered for the first time at trial three years after the accident. Officer DeYoung's testimony that the steering column was peeled was not represented anywhere, was not memorialized anywhere in any of his reports, nor did he take any photographs of the allegedly peeled steering column. In its ruling, the trial court expressly noted this credibility problem with regard to this portion of DeYoung's testimony, noting that the defense had pointed out this was not in any reports, there were no photographs, there was nothing to corroborate DeYoung's testimony that the steering column was peeled. The court noted all of that and then said, but in fact Sabrina Wright did testify that the steering column was peeled, and therefore the court resolved credibility determinations in favor of the state. It's clear from the court's ruling that it considered its erroneous recollection of Wright's testimony in making its credibility determinations in favor of the state, and thus it cannot be said that it did not play a role in the court's decision. Appellant would note that there is, Appellant acknowledges that this error was not preserved in a motion for new trial or objected to at trial, but would note, as held in People v. Davis, that the waiver rules are less rigid when they apply to the conduct of the court, and would further note that this court may review the error under the doctrine of plain error because the evidence in this case was closely balanced. This was essentially a credibility contest between the witnesses for both sides, the testimony of Officer DeYoung regarding what he believed to be the conditions of the car that indicated it was stolen, and the alleged statement by Miller, and the testimony You're telling us that the evidence was close in this case? Yes, Your Honor. And therefore we could consider this under the plain error rule? Because it would have made a difference in the verdict. That's correct, Your Honor. It is our first contention that you need not consider it under the doctrine of plain error because, indeed, it was the trial court's misrecollection, and thus the conduct of the court that was at issue here, and thus the forfeiture rules are relaxed. But in the event that the court deems that this was forfeited, it may be reviewed under the doctrine of plain error, and the evidence was close. We had, competing with the physical evidence in this case, actually sort of unusually supported both versions of events. Rodney Miller presented testimony from two witnesses who testified that Ronald Abrams testified that he sold the car to Everett Murek, who was an associate of Miller's, who worked for Miller. Miller ran a junk towing car business. Abrams testified that he sold his wife, Sabrina Wright's car, to Everett Murek. Murek testified the same way. I approached Ronald Abrams. I knew the car wasn't running. I'd seen it parked on the street. I asked him if I could buy it. He said, sure. I bought it. I towed it without title, without keys. I had it towed to a repair shop, where it was subsequently repaired, and then Mr. Miller apparently began to drive it. The facts of the condition of the car, the fact of possession of the car, in this case, therefore, supports both versions of events. It is undisputed that Miller was in possession of the car at the time of his arrest. This is perhaps different than your typical possession of a stolen motor vehicle case, in that the issue, in this case, is whether the car was actually stolen or not. And there was both evidence that depended on the credibility of witnesses. And how many years did he get for stealing a $40 car? 19 years, Your Honor. So, per this Court's decision in People v. Naylor, when, indeed, a trial presents the context of credibility between defense and state witnesses, and, in this case, made based on an erroneous recollection of the facts and of the testimony by the trial court. Counsel, tell me, what was the time limit between when the police found out that or saw that we're in pursuit of the vehicle that ate something in the morning and when they found out that it was stolen? That was, you know, a little troubling to me. Sure. Your Honor, the officer of Young's testimony was he did not know the car was stolen at the time that he began the pursuit of Mr. Miller. He observed Miller violate the median at a traffic intersection that the police were monitoring because it was a location of frequent traffic violations, and that's why he began the pursuit. It was only after Miller had gotten into the accident and been placed in custody that Young learned that the car had been reported stolen out of Chicago 45 minutes earlier. So, 45 minutes elapsed between the time Sabrina Wright reported the car stolen and Miller's arrest. How could there have been time for a repair to have been made in order for the vehicle to be able to go? Was it 70 miles per hour? It appears from the video that it was roughly 70 miles an hour. I mean, from one minute it's sitting on flats and unable to move, and the next it's going 70 miles an hour. Can you explain that? We would submit that that supports Miller's version of events, that Mr. Abrams, in fact, sold the car several days before, and it had been towed and repaired by the time Miller was driving it. Abrams and, in fact, Sabrina Wright, the state's witness Sabrina Wright, both testified that the car was in a non-operational condition and therefore would have had to be repaired. In fact, Abrams testified that it had two flat tires. So it could not, I would submit, have been driving at 70 miles an hour from Officer Young 45 minutes after it was stolen if, indeed, it had been stolen that morning in that condition. If there are no further questions from the Court, we would ask that the Court reverse Mr. Miller's conviction and remand for a new trial. Before you start, were any Miranda warnings ever given here? No. Before you start, what was your name? Mary Needham, N-E-E-D-H-A-M. Thank you. May it please the Court, defendant has to prove two prongs of Strickland, prejudice and also deficiency of counsel's performance, and he can't meet either of the prongs of Strickland. It cannot be said that this statement that defendant made acknowledging that the car was stolen was so critical in light of all the other evidence that his conviction hangs on that statement. The evidence is not closely balanced. You have an offender driving a car that is with no keys, peeled steering column, punched out lock. He tries to elude the police. He leads them like a madman on a high-speed chase, putting other motorists and the public at risk. He's caught when his car collides with another vehicle. He's still trying to escape, and then he gives the police officers a false name and birth date. All of this evidence. You said he tried to escape. I saw the video. How did he try to escape? Well, he is leaving the passenger side of the car after he collides with it. He falls down and he claims he has a broken leg. Well, he's looking over his shoulder and he tries to move before he falls down and can't move anymore because of his injuries. He's escaping with a broken leg laying on the ground. He's trying to. Is he crawling? I mean, how is he escaping? Well, he wasn't escaping by then because his escape was thwarted by his own injuries. So when you say he was escaping, he really wasn't escaping. No, his attempt to escape had been... Fleeing from the car while the car is chasing. He escaped while he was eluding police officers. The lights are on, the siren is going. He was escaping from the police chase then. Correct. Also, counsel was not deficient in failing to move to suppress the statement. Counsel reviewing this videotape prior to trial would see that you have an officer saying, what did you do? Why are you running? And you do not hear an audible response from the defendant. You do hear a defendant crying out that his leg hurts, but you don't hear an audible response. Did he say he had a broken leg? Yes, he was saying, well, he was saying, my leg, my leg. I mean, that's my understanding I heard. So counsel would know that this officer, he would have another tool in his arsenal to impeach the credibility of Detective DeYoung. So when Detective DeYoung was going to say that, that defendant said this, counsel was going to and did admit the videotape with the audio, and then he argued to the trial judge. He doesn't admit that, judge. So in addition to impeachment by omission for the lack of reporting in his report that the steering column was peeled, the attorney had... Is that a decision that says that you don't have to give Miranda warnings? No, that's not what I want you to write. But I think it's quite easy to write a decision that says counsel made it as a matter of strategy, said I'm not going to contest this because this is not shown by the physical evidence of the recording. And therefore, he had another basis on which he could attack the credibility of the officer who saw and arrested the defendant. So you don't think a good lawyer should make a motion to suppress? I don't understand what you mean. I say should a lawyer make a motion to suppress under those circumstances? In these circumstances, no, because it's a matter, it's a strategic decision whether to or not. What did you say was inaudible? You do not hear defendants say, yes, this is a stolen motor vehicle, or yes, I knew the vehicle was stolen. So it's our position that the record shows this was a matter of trial strategy and the defendant was not prejudiced by this remark, this evidence at all. And it must be noted also the trial court never said this is the most critical evidence in the case. I know that he admitted, you know, his guilt of this and that's why. That this was a bench trial. The judge said I'm basing my decision on all the evidence that I heard, not just on the defendant's admission. So you think that that admission had no effect whatsoever? I don't think it had the effect that it would say that the defendant was prejudiced by it, no. I don't think he was prejudiced by an admission of guilt. No, I don't. Counsel, if there's no admission and you've got witnesses on both sides, why isn't the evidence close in this case? Where do I start? The evidence is not close. You have the victim, the car's owner. The car is in her name. It's registered. She owns title in her name. It's registered in her name. It's her car. She has the keys. And her husband sells it. Even if that statement is true, that he did sell it to Merrick and Merrick gave it to defendant, that car is stolen. He has no right to sell that car. And Merrick and defendant are supposedly in the car business. They tow cars. They're in junk vehicles. So you're saying the husband stole it? I'm not saying the husband stole it. I'm saying if you look at the evidence, even if you consider that defendant's evidence credible, which the trial court did not, that that proves there was a theft of the car. Because the husband had no legal authority whatsoever. But not by the defendant. Not by the defendant. No, but it establishes one of the elements, and that's that the car is stolen. Well, how about the evidence that she was testifying that she knew that her husband sold it and the court sustained an objection to that, and that evidence never came out? Was that an error? No, it was not. That's not an error? No, it is not. At some point later, the question was, did you learn at some point later that the car was actually sold? What does that show? That would show that she knew that her husband sold the car. And the point then, the next question would be, when did you find that out? I mean, that's very important, because if she knew that, you see, then maybe there was some consent to that sale. Well, we know that it wasn't at the time, because defendants on witness testified that he, I mean, the husband. Well, we don't know what time that occurred, because she reported it stolen immediately. It could have been the next day that she found out her husband sold it, maybe two days later. And her husband says, I knew she was reporting it stolen. I didn't say anything at the time. Sure, he didn't want to tell her that he had the money, the big 40 bucks. And again, it doesn't show that the car wasn't stolen. If I can briefly address this defendant's claim about the steering column being peeled. Both these claims, this claim and the claim about the improper evidence, the evidence being excluded regarding the, when the victim learned that her car was supposedly sold, both forfeited. So it's the defendant's burden to show, one, that these were clear and obvious errors, and that the evidence is so closely balanced that this error tipped the balance in favor of the prosecution. Can you honestly tell us that this defendant received a fair trial under American law? Yes. There was no objection. You have to show it's a clear and obvious error. It's not a clear and obvious error for the trial judge to say that the witness testified, that Ms. Wright testified that the car was, that the steering column was peeled, because she said the car was trashed and torn up. And that could reasonably be inferred to be a reference to the steering column. The car was smashed in the front when she saw it next. And I also would say that the trial court did not state that it found the detective credible based on Ms. Wright's testimony regarding the steering column being peeled and torn up. On the video, you see Detective DeYoung look at that steering column four times. Four separate occasions he is in the front of that car looking around. And at one point he is talking into his radio after he's looking at the front of the car. And he did testify also that when he saw the steering column, he reported it to ECOM. That video, can you honestly tell me that you could tell what he was looking at? Yes, from my viewing of it, he's spending a significant amount of time looking around the front of the vehicle. He's, at one point he's looking from the driver's side on the outside, looking right in at the front driver's area. And the other time, not only Detective DeYoung, but five other officers are climbing in the passenger side and looking in the driver's area. Were they looking all over the car? At some points they were looking all over. But I don't see how you could be looking and examining the front of that vehicle without noticing that the steering column is peeled. And that tape corroborates Detective DeYoung's testimony far more than Ms. Wright's testimony. All right, so you don't know that he looked at the steering column. You're just inferring that he did because he looked in the car. Well, I observed the videotape and saw him examining the front of the car for several minutes. And I think that's a fair conclusion to support his testimony that he did view the steering column peeled and that he recorded it. But you didn't see the steering column in the video, did you? No. So this is just an assumption that you're making. No, it's not an assumption. It's plainly visible on the tape that he is looking in the vehicle, looking from the passenger side right at the front driver's area. Okay. Again, it's clear and obvious errors. They're not present here. Closely balanced evidence? No, it's not closely balanced. You do have, as I said, gentlemen who are supposedly in the towing business, car business. They accept a car without title. They accept a car even if it's supposedly a junk vehicle. And I would submit that the video shows this is not such a clunker after all. This is a car that appears normal. You see far worse cars on the street than this car appeared. And you have a defendant driving the car when we know that he has no keys to start that car. He's eluding the police, driving on a high-speed chase, which is more than just unwise for a motorist. Motorists who are going to be pulled over for a traffic violation don't lead police on a high-speed chase unless they're fleeing because they're conscious that they're guilty of another offense. And that's what the evidence shows here. The evidence is not closely balanced. Even if you want to credit defendant the defense theory that the car was sold by the victim's husband, he had no legal authority to sell that car for any amount of money. And it doesn't change the fact that defendant was in possession of a car, however he got it, with no keys, steering column peeled, locks punched out. For this reason and the reasons in our brief, we ask that you affirm defendant's conviction for aggravated possession of a stolen motor vehicle. Thank you. Counsel. Thank you, Your Honor. Just very briefly, just two points on rebuttal. The state in its argument suggested that even if Ronald Abrams testified truthfully that he sold the car to Everett Murek, it was still a stolen car and thus Rodney Miller could still have been found guilty. The statute requires knowledge that the car is stolen. Illinois law does allow for a presumption or an inference of knowledge that a car is stolen, but that inference and presumption is rebuttable. In this case, we had Miller presented evidence to rebut that inference in the form of the testimony of Abrams and Murek that there was a sale of the car. Rodney Miller reasonably believed that he was a bona fide purchaser of the car and not that the car was stolen. Second, the state in its oral argument argues for the first time that the failure to move to suppress the confession was a strategic decision because counsel wished to impeach Officer DeYoung with the fact that the video does not corroborate DeYoung's testimony about the statement. We would submit that if you have a custodial confession that's made without benefit of Miranda warnings, the best and wisest course of action is to move to suppress that statement entirely rather than to try to impeach the officer's testimony about that statement. The state cites no case to suggest that it is a reasonable strategic decision to decide to impeach the officer regarding that testimony instead of keeping that testimony out entirely. For the foregoing reasons and those in our brief, we ask that this court reverse and remand for a new trial. Thank you, counsel. All right. We're going to take the case under advisement and we're going to change panels, but we're not going to move. I'm going to move. They're going to stay.